# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs September 16, 2014

## STATE OF TENNESSEE v. LEE ANN LYNCH

**Appeal from the Circuit Court for Blount County**
**No. C-18427    David R. Duggan, Judge**

---

**No. E2014-00246-CCA-R3-CD - Filed October 27, 2014**

---

The Defendant, Lee Ann Lynch, appeals the Blount County Circuit Court's order revoking her community corrections sentence for her conviction for promotion of methamphetamine manufacture and ordering her four-year sentence into execution. The Defendant contends that the trial court abused its discretion by revoking her community corrections sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

J. Liddell Kirk (on appeal), Knoxville, Tennessee and Mack Garner (on appeal and at hearing), District Public Defender, for the appellant, Lee Ann Lynch.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Mike Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On August 8, 2011, the Defendant pleaded guilty to promotion of methamphetamine manufacture. As part of the plea agreement, she accepted a four-year, split-confinement sentence, 120 days of which were to be served in jail with the remainder suspended and the Defendant placed on supervised probation. On November 30, 2012, a probation violation warrant issued and alleged that the Defendant violated four rules of probation by obtaining new charges, not notifying her probation officer of the charges, failing a drug screen, and having an unpaid balance of $3232.50 on the $3302.50 bill of cost for her conviction. The Defendant stipulated to the facts alleged in the violation warrant and waived a hearing. The

trial court found that the Defendant violated the probation terms. It revoked her probation and ordered her to serve eighty days in jail and the balance in the community corrections program.

On April 15, 2013, the present violation warrant was issued. It alleged that the Defendant violated four conditions of community corrections by failing to report for supervision, failing to report for "MRT group," failing to provide proof of employment, and failing to provide proof of court payments.

At the revocation hearing, Brian Hensley, an employee of East Tennessee Human Resource Agency Community Corrections, testified that he conducted the Defendant's intake on March 26, 2013, the only day she reported as required. He said the Defendant never provided employment verification, disability documents, or proof of payment of court costs. He said he tried unsuccessfully to contact the Defendant when she failed to report the following week. He said that one telephone number was disconnected and that the second number did not have voice mail. He said that offenders were required to report weekly until they completed "MRT" and that the Defendant never completed "MRT."

Mr. Hensley testified on cross-examination that at intake, the Defendant appeared to understand his explanation of the community corrections requirements. He thought she told him she would have a hard time reporting because she lived in Knoxville. He thought she had a history of drug use and suspected when he met her that she had substance abuse and emotional problems. He said the Defendant could have been transferred to a community corrections program in Knoxville if she had completed the necessary requirements.

The thirty-two-year-old Defendant testified that she was single and had six children, one of whom was ten weeks old. She attended school through the eleventh grade. She said her conviction related to her buying Sudafed that she planned to resell in order to have money to purchase drugs. She agreed her probation had been revoked after she was charged with driving with a revoked license and theft. She agreed she had not seen Mr. Hensley since March 26, 2013, when he had informed her of the rules of community corrections. She said that since March 26, she had "got back on drugs," had been pregnant, and had her baby. She said that she became pregnant immediately after she was released from jail in March 2013 and that she learned she was pregnant three days after meeting with Mr. Hensley. She said she became addicted to drugs at age twenty-three.

The Defendant testified that she had not used drugs before meeting with Mr. Hensley. She said that pills were her preferred drug and that she began using them again after "hanging out" with a family member who had them. She said that during the time she was not reporting to Mr. Hensley, she lived with her aunt. She also had a relationship with a man

-2-

who provided her with Hydrocodone pills. She said she did not use drugs for about two and one-half weeks after she was released from jail.

Regarding the circumstances of her arrest in December 2013 for the current violation warrant, the Defendant testified that the police responded when her brother and her baby's father fought. They discovered she had an outstanding warrant. She denied receiving any new charges.

The Defendant testified that she would do "whatever it takes" if the trial court would allow her to remain on community corrections. She said she would go to a halfway house and understood she must report as required. She understood she could not use drugs and would be drug tested. She expressed an interest in drug court.

The Defendant testified that she was motivated to stay out of jail because her children did not need to see her in and out of jail. She said that her baby did not have drugs in his system at birth and that she had learned her lesson. She said three of her children lived with their father. Three children lived with her, including her baby, although her cousin had temporary custody of the baby until the community corrections violation was resolved.

On cross-examination, the Defendant acknowledged the circumstances of her previous probation violation and her failure to report for nine months after the community corrections intake. She testified that she continued to use Hydrocodone during the entire time she was pregnant. She acknowledged that two or three of the four or five drug tests she had during her pregnancy were positive. When asked why she said she would do whatever was necessary to remain drug free despite her failure to do so when she was pregnant, she said she had been "running around with the wrong crowd" previously and was tired of hurting her children.

Defense counsel argued that the Defendant had been forthcoming with the trial court and that she should be referred to the drug court program for evaluation. Counsel argued that the Defendant's needs would best be served by placement in the drug court program followed by placement in a halfway house. The court found that the Defendant committed material violations of her community corrections sentence by failing to report as required, failing to participate in "MRT group," failing to provide proof of employment, and failing to provide proof of payment of court costs. The court noted the Defendant's previous probation revocation, which led to her community corrections placement. The court revoked the Defendant's community corrections sentence and ordered her to serve her sentence in the Department of Correction. This appeal followed.

A trial court may revoke a defendant's probation upon its finding by a preponderance of the evidence that the defendant violated a condition of the sentence. T.C.A. § 40-35-

311(e) (2014) (prescribing the procedure for probation revocation proceedings). Given the similar nature of a sentence of community corrections and a sentence of probation, the same principles are applicable in deciding whether the revocation of a community corrections sentence is proper. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). Our supreme court has concluded that a trial court's decision to revoke a defendant's community corrections sentence "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *Id.* at 82 (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)). When a defendant's community corrections sentence is revoked, the court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed." T.C.A. § 40-36-106(e)(4) (2014).

The Defendant contends that the trial court abused its discretion by ordering confinement for the balance of the sentence. The Defendant notes her lack of new criminal charges, the non-violent nature of the conviction offense, and her willingness to participate in treatment and to comply with the terms of release. The evidence supports the court's findings that the Defendant failed to report for supervision, did not participate in "MRT group," did not provide proof of employment, and did not provide proof of payment of court costs. The Defendant testified that she began abusing narcotics shortly after her release from the previous revocation but that she was now ready to address her addiction in order to provide a better example for her children. We conclude, though, that the court did not abuse its discretion by revoking the Defendant's community corrections sentence and ordering her to serve the remainder of the sentence in the Department of Correction. After her conviction, the Defendant was given an opportunity to reform her conduct and was granted split confinement that included probation. She violated the terms of probation and was given a second opportunity to reform her conduct. For the nine months after her release to

community corrections and her arrest for this violation, she did nothing toward the community corrections requirements beyond meeting one time with the supervision officer for intake upon her release from jail.

The judgment of the trial court is affirmed.


_____
ROBERT H. MONTGOMERY, JR., JUDGE